# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:

Khader Kamal Azzouz and Nannette Azzouz,

    Debtors

Case No. 15-12559-KHK
(Chapter 11)

Khader Kamal Azzouz and Nannette Azzouz,

    Plaintiffs,

vs.

Annab, Inc.,

    Defendant

Adv. Proc. No. 16-01117-KHK

## MEMORANDUM OPINION

I.    INTRODUCTION

This matter is before the Court pursuant to Khader Azzouz'[1]s Complaint against Annab, Inc. for breach of contract, actual fraud and fraud in the inducement. Azzouz seeks a judgment of $90,000 reflecting the purchase price under the Asset Purchase Agreement, a judgment in the amount of $40,000 for additional damages that are alleged to be the direct result of the Defendant's breach of warranty and

---

[1] Although Nannette Azzouz is also a plaintiff in this matter, she did not participate in the trial and has not testified. Accordingly, although this action involves joint debtors as plaintiffs, the opinion will refer to a singular Plaintiff for purposes of readability.

1

fraud, and punitive damages in the amount of $350,000 dollars as a result of the Defendant's alleged fraud. *See* Complaint, Doc No. 1, pgs. 5-6. The Plaintiff, in essence, seeks rescission of the Asset Purchase Agreement, the underlying promissory note and the guaranty.  Annab, the Defendant, asserts the Azzouz's claims are barred by the doctrine of unclean hands, setoff, Azzouz's failure to mitigate, and ultimately that Azzouz suffered no damages.  A trial on the merits took place on December 20, 2017.  Having heard the evidence and arguments of counsel, the Court makes the following findings of fact and conclusions of law.

II.   FINDINGS OF FACT

**The Parties and the Bagel Bakery**

Khader "George" Azzouz ("**Plaintiff**"), a real estate and business broker, is the younger brother of Samar Annab. Samar and her husband, Mansour Annab, are the the owners of Annab, Inc. ("**Defendant**") which operates a wholesale bagel bakery called Bagel Bagel Inc., in Fairfax, Virginia. Trial Transcript ("**Tr**") 81-82. The bagel bakery was responsible for manufacturing and delivering bagels, donuts, and muffins to between 300 and 700 customers in Virginia and the District of Columbia.[2] Those customers largely consisted of cafés and delis. Tr. 167:7-9. From 2010 to 2014, the Defendant operated the bagel bakery with between 7 and 14 employees, including the Annabs. *See* Tr. 228-232. Some workers were paid by check.  Others were paid "under the table," or without withholding proper taxes and without properly reporting to the Internal Revenue Service ("**IRS**"). Tr. 129:5-6; 159-160.

---

[2] The customer list that was sold under the Asset Purchase Agreement included approximately 700 customers, but the Plaintiff asserts that only 310 were actually customers.

2

Central to the instant dispute is the Plaintiff's assertion that the bagel bakery reported lower sales to the IRS than were recorded in the bakery's QuickBooks sales records. Tr. 85:5-16. The parties disagree about the reason for the difference between the records and what was reported to the IRS. The Plaintiff asserts that the difference between the two amounts was pocketed as part of a scheme to underreport sales and pocket the difference. *Id*. The Defendant asserts that the difference was due to the tax return's failure to include uncollected accounts receivables. Tr. 216:16-23.

In the fall of 2012, the Plaintiff and the Defendant agreed to list the bagel bakery for sale, with the Plaintiff acting as broker. Tr. 82:2-4. In connection with listing the business for sale, the Defendant provided the Plaintiff with the 2010 and 2011 federal tax returns. Tr. 83:20-21. Ultimately, the Plaintiff decided to purchase the business for himself. Tr. 87-88. After the Plaintiff expressed interest in buying the bagel bakery, the Defendant provided the Plaintiff with the 2012 and 2013 tax returns, and eventually, the QuickBooks sales information for the bakery. Tr. 84-86. Specifically, the Plaintiff testified at trial that on March 6, 2014 he received QuickBooks sales information for the bagel bakery via email. Tr. 84:18. The Plaintiff testified as follows:

> 5 **Q** Describe again for us the additional information you
> 6 received about sales.
> 7 **A** Sales was in QuickBooks, what they actually do. On the
> 8 tax record is what they report to the IRS, and the difference
> 9 is the money that they collect and pocket.
> 10 **Q** What's your source of that information?
> 11 **A** This was from Mansour and Samar.
> 12 **Q** They told you that they were reporting sales
> 13 differently in QuickBooks than to the IRS?
> 14 **A** Yes.

3

15 **Q** Did they tell you why they were doing that?
16 **A** She just said they pocket the difference.

Tr. 85:5-16.

In April of 2014, the Plaintiff purchased the bagel bakery, making a $90,000 down payment and signing a promissory note and guaranty for $485,000. Tr. 126-127; 93:14-15; The Asset Purchase Agreement, Pl. Ex. 1. The Plaintiff's brokerage company simultaneously earned a $20,000 commission for the sale. Tr. 140:15-24.

**The Asset Purchase Agreement, the Promissory Note and the Personal Guaranty**

The Asset Purchase Agreement (the "**APA**") provided for the sale of substantially all of Bagel Bagel's assets, including machinery, vehicles, mixers, baking and kitchen equipment, and the bagel bakery's customer list. The APA also provided for the execution of a new lease of the real property where the bagel bakery was located, including the option to purchase the real estate. *See* Pl. Ex. 1, at pg. 1.

Although the agreement provided for the sale of substantially all of Bagel Bagel's assets, the Defendant would still be entitled to accounts receivables for sales accrued prior to the sale of the business. *See* Pl. Ex. 1, at ¶ 4(A)(xii). The APA contained a "study period" provision which provides under paragraph "4(A)",

> xi. Seller warrants and guarantees that the financial statements/records provided to purchasers are 100% true and accurate. Purchaser shall have an evaluation period for 90 days starting in May until end of July. Seller furthermore warrants that in the events a discrepancy is found after possession that Seller will be held liable for such discrepancy.

Pl. Ex. 1, at pg. 3, ¶ xi. Also relevant to the instant dispute is the APA's Default Provision, which provides:

4

<u>Default</u>. If Purchaser's contingencies shall have been satisfied but Purchaser fails to proceed to settlement, Purchaser shall be in default of its obligations under this Agreement. If Seller fails to proceed to settlement, Seller shall be in default of its obligations under this Agreement. The parties acknowledge that the damages, if any, that either party might incur in the event of a breach of this Agreement by either party would be difficult, if not impossible to determine. Therefore, the other party may elect to accept partial performance or, in lieu of any other remedy, elect to terminate this Agreement. All deposit and down payment paid into escrow account shall be returned to Purchaser without any delay or demand.

The APA included various warranties. Of those warranties, the Plaintiff alleges that the following warranties were breached:

Section 4(A)(i):

All commissions, salaries, bonuses and additional compensation due any of the employees of Seller for services rendered prior to settlement are to be paid in full by Seller, at time of settlement. Any employee wages held by Seller must be paid to Purchaser at time of settlement to be held by Purchaser in Purchasers account.

Section 4(A)(iii):

Seller warrants that it has paid all taxes [including but not limited to sales taxes, employment taxes, FICA withholdings imposed by any federal, state, or municipal authority], impositions, interest, and or penalties upon any such taxes or impositions relating to the Assets, the Business, or the Business premises.

Section 4(A)(x):

For a period of ten (10) years after the effective date of this agreement, Mansour & Samar Annab will not directly or indirectly solicit business from or attempt to sell, license or provide the same or similar products or services as are not provided to any customer or client of Annab Inc. T/A Bagel Bagel Wholesale Bakery. See customer list – Exhibit C. - * However, Mansour & Samar Annab shall be permitted to operate a Danish/doughnut/muffin business.

*See* Complaint at pgs. 4-5; *See* Pl. Ex. 1, at ¶ 4.

5

**Take-over of the business**:

On or about April 6, 2014, the Plaintiff took over the bagel bakery. Within a few days of taking over, the Plaintiff began noticing discrepancies between the actual payroll figures and the payroll figures reported to the IRS. *See* Tr. 125:10-12. On July 24, 2014, the IRS issued a Notice of Federal Tax Lien to the Defendant for outstanding 2012 and 2013 obligations. Pl. Ex. 20. The Notice was sent via U.S. Postal Service to the bagel bakery. The Defendant did not receive the Notice but was notified of its existence via a telephone call. Tr. 120:4-20. The Defendant asserts that she implemented a payment plan and that as of the trial date, she has fully resolved the matters that gave rise to the Notice. Tr. 66:1-5. The Plaintiff was not required to make any, and did not make any payments in connection with the Notice, nor was the Plaintiff prevented from operating the business by the Notice. Tr. 138-139. On July 15, 2014, the Plaintiff, through counsel, sent a Notice of Rescission to the Defendant. The Defendant refused to honor the rescission. *See* Tr. 125.

Following the Notice of Rescission, and the Defendant's refusal to honor the rescission, the Plaintiff continued to operate the bagel bakery and collect on the accounts receivables up through and even after returning possession of the bagel bakery to the Defendant in October of 2014. Tr. 148-149. Indeed, between April and October of 2014, the Plaintiff operated the business and collected roughly $51,000 in receivables to which the Defendant was entitled. Tr. 135:18-20. Although the Plaintiff admits to collecting accounts receivables that belonged to the Defendant, the Plaintiff has not turned any of those funds over to the Defendant. Tr. 136:9-13.

III.   CONCLUSIONS OF LAW:

**Jurisdiction**

The Complaint seeks an award of damages and rescission of the APA. The recovery of damages or the down-payment from the APA would affect the amount of property available for distribution to creditors, making the claims "related to" the Debtor's bankruptcy estate. Therefore, pursuant to 28 U.S.C. §§ 157 and 1334(b) and the general order of reference for the U.S. District Court for the Eastern District of Virginia dated August 15, 1984, this Court has subject matter jurisdiction. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

Pursuant to the Initial Scheduling Order entered in this case on July 19, 2016, the parties are deemed to have consented to the entry of final orders and judgments by the undersigned. *See* Initial Scheduling Order, Doc No. 6, ¶6; *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1949 (2015).

**Choice of Law**

A federal court sitting in diversity jurisdiction must apply the choice of law rules of the forum in which the court sits. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941). In *Compliance Marine, Inc. v. Campbell (In re Merritt Dredging Co.)*, 839 F.2d 203, 206-07 (4th Cir. 1988), the Fourth Circuit extended that principle to bankruptcy cases. Under Virginia conflict of law principles, the parties' choice of law provision will be enforced, provided that it reasonably relates to the purpose of the agreement and only to the extent that the question is one of substantive law. *Hooper v. Musolino*, 234 Va. 558, 566, 364 S.E.2d 207, 211, 4 Va. Law Rep. 1516 (1988).

7

Because Virginia is the forum state, the Court must apply Virginia's choice of law rules. *Arrowsmith v. Lemberg Law, LLC (In re Health Diagnostics Lab., Inc.)*, 571 B.R. 182, 192-93 (Bankr. E.D. Va. 2017). As to the breach of contract count, neither party disputes that Virginia law controls and the APA itself selects Virginia law to govern the agreement. *See* Pl. Ex. 1, at ¶ I. Accordingly, the Court will apply Virginia law to the contract based claims.

As for the fraud counts, the place of the "last event necessary to make an act liable for an alleged tort" determines which state's substantive law applies. *Arrowsmith*, 571 B.R. at 192-93. Neither party disputes that all relevant events took place in Virginia, and that all parties are Virginia residents or entities. Accordingly, the Court will apply Virginia law to these claims.

**Breach of Contract and Warranties**

In Virginia, "[t]he elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." [*internal citation omitted*]. The plaintiff bears the burden to establish the element of damages with reasonable certainty. (citing *Nichols Construction Corp. v. Virginia Machine Tool Co., LLC*, 276 Va. 81, 89, 661 S.E.2d 467, 472 (2008)). Damages that are contingent, speculative, and uncertain are not recoverable because they cannot be established with reasonable certainty. [*internal citation omitted*]. *Sunrise Continuing Care, LLC v. Wright*, 277 Va. 148, 154, 671 S.E.2d 132, 135 (2009).

8

Neither party disputes that a contract was formed, as both parties assert breaches of this contract. As such, the Court need not address whether a contract was formed. Further, the Court will assume without deciding that the relevant warranties were breached; however, the Plaintiff's claim fails because the Court finds that the Plaintiff has failed to establish damages flowing from the breach of these warranties. The Plaintiff conceded at trial that he incurred no liability nor did he have to make any payments in connection with the alleged breaches of warranties. Tr. 138-139. Further, the Plaintiff also conceded that his operation of the business was not interrupted by the alleged breaches of warranty. Accordingly, the Plaintiff's request for relief is denied for failure to prove with reasonable certainty, any alleged damages that were suffered as a result of the alleged breaches.[3] As a result, the Court will enter judgment for the Defendant on this count.

**Fraud**

"A cause of action for actual fraud requires the plaintiff to prove: (1) a false representation, (2) of a material fact, (3) made intentionally and knowingly, (4) with intent to mislead, (5) reliance by the party misled, and (6) resulting damage to the

---

[3] The Plaintiff also asserted at trial that he suffered a $20,000 loss as a result of the Defendant's alleged breaches of warranties. Tr. 136:14-25. The $20,000 is apparently a capital contribution that Plaintiff put into the business following execution of the APA in order to have operating funds. Plaintiff confirmed at trial that these funds were advanced to him by business partners. It is unclear to the Court how the Plaintiff considers this $20,000 capital contribution as damages when he admitted in open Court that the profits of the business were "very close to what was represented to [him]. Tr. 151:14-18. Regardless of the source or nature of the funds, the Court finds that the Plaintiff failed to demonstrate that this $20,000 is a compensable loss that he suffered or that it flowed from the Defendant's alleged breaches. This is especially true in light of the fact that Plaintiff admitted in open court that he himself breached the APA by collecting and keeping $51,000 of receivables that were owed to the Defendant. Tr. 135-136.

9

party misled." *Cohn v. Knowledge Connections, Inc.*, 266 Va. 362, 367, 585 S.E.2d 578, 581 (2003).

As the Fourth Circuit has stated, in Virginia "[i]t is not enough for a plaintiff in a fraud action to show that it acted to its detriment in response to the defendant's false representation . . . of a material fact. 'In order to prove reliance, a plaintiff must demonstrate that its reliance upon the representation was reasonable and justified.'" *Elliott v. Great Point Partners, LLC*, No. 1:10cv1019 (JCC/JFA), 2011 U.S. Dist. LEXIS 827, at *11-13 (E.D. Va. Jan. 5, 2011) (citing *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 630 (4th Cir. 1999)). Where information is known that would excite the suspicion of a reasonably prudent person, reliance on that information without further investigation is not reasonable. *White v. Potocska*, 589 F. Supp. 2d 631, 652 (E.D. Va. 2008).

The Plaintiff's testimony establishes that at the latest, on March 6, 2014, he knew that the Defendant was not properly reporting sales to the IRS. The Plaintiff executed the APA in April of 2014. *See* Tr. 84-86. "[I]n circumstances where a prudent buyer *would have* conducted an investigation and, thereby, discovered the seller's misstatement, a buyer who fails to make such an investigation may not assert fraud based on the factual misrepresentation." *Elliott v. Great Point Partners, LLC*, No. 1:10cv1019 (JCC/JFA), 2011 U.S. Dist. LEXIS 827, at *15 (E.D. Va. Jan. 5, 2011) (citing *Hoover Universal, Inc. v. Brockway Imco, Inc.*, 809 F.2d 1039, 1044 (4th Cir. 1987)). As a result, the Court finds that the Plaintiff had knowledge of the Defendant's practice of underreporting to the IRS. The Court further finds that this

information would excite the suspicions of a reasonably prudent person who was concerned about liabilities to the IRS.

Therefore, the Court finds that the Plaintiff's reliance on the Defendant's representations regarding tax liabilities was unreasonable given the Plaintiff's knowledge that the Defendant was underreporting sales to the IRS and "pocket[ing] the difference." Thus, the Court declines to address the remaining elements of the actual fraud claim, and will enter judgment for the Defendant on this count.

**Fraud in the Inducement**

To set forth a claim for fraud in the inducement in Virginia, a plaintiff must prove by clear and convincing evidence that: (1) the defendant made a material misrepresentation for the purpose of procuring a contract; (2) the plaintiff relied on the misrepresentation; and (3) the plaintiff was induced by the misrepresentation to enter into the agreement. *Evaluation Research Corp. v. Alequin*, 247 Va. 143, 148, 439 S.E.2d 387, 10 Va. Law Rep. 779 (1994). In addition, the promise upon which the claim is based must have been false when made. *See Station #2, LLC v. Lynch*, 280 Va. 166, 173, 695 S.E.2d 537 (2010) ("Station # 2 does not allege that Gadams' and Marathon's promise was false when made . . . [a]ccordingly, Station # 2's allegations were insufficient to establish a claim of fraudulent inducement."). Fraud in the inducement also requires that "the circumstances constituting fraud be stated with particularity." Fed. R. Civ. P. 9(b). *Metro Mail Servs. v. Pitney Bowes*, Civil Action No. 1:16-cv-1416, 2017 U.S. Dist. LEXIS 49840, at *17-18 (E.D. Va. Mar. 31, 2017). The Plaintiff's fraud in the inducement claim fails for the same reason the actual fraud claim fails – the Plaintiff's reliance was not reasonable given his

knowledge of the Defendant's underreporting to the IRS. The Court will, therefore, enter judgment for the Defendant on this count.

**Plaintiff's Attempt to Rescind**

The Court again turns to Virginia contract law to assess Plaintiff's rescission theory. Contracts between parties are subject to basic rules of interpretation. *Wilson v. Holyfield*, 227 Va. 184, 187, 313 S.E.2d 396, 398 (1984). Contracts are construed as written, without adding terms that were not included by the parties. *Holyfield*, 227 Va. at 187. Where the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning. *Bridgestone/Firestone v. Prince William Square Assocs.*, 250 Va. 402, 407, 463 S.E.2d 661, 664 (1995); *Ross v. Craw*, 231 Va. 206, 212, 343 S.E.2d 312, 316 (1986). Furthermore, contracts must be considered as a whole "without giving emphasis to isolated terms." *American Spirit Ins. Co. v Owens*, 261 Va. 270, 275, 541 S.E.2d 553, 555 (2001). Finally, no word or clause in a contract will be treated as meaningless if a reasonable meaning can be given to it, and parties are presumed not to have included needless words in the contract. *D.C. McClain, Inc. v. Arlington County*, 249 Va. 131, 135-36, 452 S.E.2d 659, 662 (1995). Since neither party has asserted ambiguity in the APA's terms, the Court will give effect to the APA's plain meaning.

The Plaintiff asserts that he had a right to rescind and asserted that right, pursuant to the APA's study period provision in combination with the Default provision. However, APA Section 4(A)(xi) does not seem to provide for rescission of the contract. The study period provision clearly states that "in the events a discrepancy is found after possession that seller will be held liable for such

discrepancy." Pl. Ex. 1, at pg. 3, ¶ xi. As previously noted, the Plaintiff did not incur any liability as a result of the alleged breaches of any of the warranties under paragraph four of the APA. Thus, the study period provision is not the source of a rescission right.

The Plaintiff also asserts that he had a right to rescind the APA under the Default provision. This provision first defines the event of default and then seems to provide the available remedies in the event of default. Rescission is an available remedy, but breach of a warranty is not an event of default under the APA. The Court finds the following the language particularly informative:

> [t]he parties acknowledge that the damages, if any, that either party might incur in the event of a breach of this Agreement by either party would be difficult, if not impossible to determine. Therefore, the other party may elect to accept partial performance or, in lieu of any other remedy, elect to terminate this Agreement. All deposit and down payment paid into escrow account shall be returned to purchaser without any delay or demand.

Pl. Ex. 1, at ¶ 6. The assertions of fraud in this case are essentially all assertions of breaches of warranties contained in the APA, and the warranties in the APA generally speak to liability, i.e. damages, for the breach of those warranties, not rescission. Further, as previously noted, the breach of these warranties is not listed under the default provision, and to read them into that provision would render the Warranty provision for liability, meaningless. *D.C. McClain, Inc. v. Arlington County*, 249 Va. 131, 135-36, 452 S.E.2d 659, 662 (1995).

Even if the APA did not speak so plainly to the matters before the Court, under Virginia law, "to rescind a contract, a failure in performance 'must be total or

substantial in order to justify rescission.'" *Sternheimer v. Sternheimer*, 208 Va. 89, 97, 155 S.E.2d 41 (1967). The Plaintiff has failed to demonstrate such a "total or substantial" failure in performance, particularly given that he admitted he suffered no liability, and admitted at trial that the profits of the business were "very close to what was represented to [him]."[4] Even more detrimental to Plaintiff's attempt to rescind is that he continued operating the business after the purported attempt to rescind, and admits that he breached the APA by keeping receivables to which the Defendant was entitled[5]. The Plaintiff cannot assert a rescission of the contract while continuing to enjoy the benefits he received under it. *See Abateco Services, Inc. v. Bell*, 23 Va. App. 504, 518, 477 S.E.2d 795 (1996) ("A party 'cannot accept the benefits of the contract and then assert he is entitled to be relieved of its obligations'"). Therefore, the Court finds that any attempt to rescind was ineffective, and any attempt to rescind now is not warranted or possible under the circumstances.

Accordingly, based on the foregoing, the Court will enter judgment for the Defendant on all counts. As a result the Court declines to address the Defendant's Affirmative Defenses. Further, because the Plaintiff failed to demonstrate a right to compensatory relief, the Court sees no basis to award punitive damages. Indeed, under Virginia law, "[i]t is well-established that 'an award of compensatory damages . . . is an indispensable predicate for an award of punitive damages, except in actions for libel and slander.'" *Syed v. Zh Techs., Inc.*, 280 Va. 58, 75, 694 S.E.2d 625, 634

---

[4] Tr. 151:14-18.
[5] Tr. 135:18-20.

(2010) (citing *Gasque v. Mooers Motor Car Co.*, 227 Va. 154, 159, 313 S.E.2d 384, 388 (1984)).

      A separate Order will be issued simultaneous to the entry of this Memorandum Opinion.

Date  Aug 17 2018

/s/ Klinette Kindred

Hon. Klinette H. Kindred
United States Bankruptcy Judge

EOD 8/17/2018

Copy electronically to:

James P. Campbell
Campbell Flannery, P.C.
One Village Plaza
1602 Village Market Boulevard, Suite 220
Leesburg, VA 20175

Michael Mitry Hadeed, Jr.
Hadeed Law Group, PC
510 King Street, Suite 400
Alexandria, VA 22314